IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| PHILIP AUERSWALD, *Plaintiff,* v. GEORGE MASON UNIVERSITY, *Defendant.* | Civil Action No. JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Philip Auerswald ("Professor Auerswald", or "Plaintiff"), by and through undersigned counsel, files this Complaint against Defendant George Mason University ("GMU", or "Defendant") on the following grounds:

1. This action is brought by the Plaintiff for damages against Defendant for retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e)-3.

## JURISDICTION AND VENUE

2. Federal question subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331; 28 U.S.C. § 1343; 42 U.S.C. § 1988, and 42 U.S.C. § 2000e-5.

3. The Court has personal jurisdiction over Defendant as Defendant conducts business throughout Virginia.

4. Venue is proper in this District pursuant to 42 U.S.C. Section 2000e-5, and 28 U.S.C. § 1391. The acts and omissions alleged herein occurred within this judicial district.

## PARTIES

5. Professor Philip Auerswald is a professor of Public Policy currently employed by GMU since 2003. Professor Auerswald is an individual over the age of eighteen (18) and resides in Washington, DC.

6. George Mason University is a public university located in Fairfax, Virginia.

## ADMINISTRATIVE REMEDIES

7. Professor Auerswald filed a Charge of Discrimination alleging retaliatory failure to promote with the Equal Employment Opportunity Commission (EEOC) on December 16, 2020.

8. Professor Auerswald amended his Charge on July 1, 2022.

9. More than 180 days after he filed his Charge, the EEOC issued Professor Auerswald a Notice of Right to Sue on July 22, 2022. *See* Exhibit A.

10. Professor Auerswald satisfied all administrative perquisites to bringing this action.

## STATEMENT OF FACTS

**Summary of Professor Auerswald's Scholarship**

11. Professor Auerswald holds a Bachelor of Arts in Political Science and a Ph.D. in Economics.

12. Professor Auerswald has authored three books (published in 2001, 2012, and 2017) on the intersection of technology, innovation, and economics.

13. Professor Auerswald has authored or coauthored twenty-two (22) journal articles, twelve (12) book chapters, and numerous reports and working papers. He is the founder of *Innovations* journal, published since 2006 by MIT Press.

14. Professor Auerswald has won over fourteen (14) contracts and grants for research, programs, and publications, totaling more than $1.7 million.

15. Professor Auerswald has served as a consultant to the White House Office of Science and Technology Policy, the World Bank, the National Academy of Sciences, the Bill & Melinda Gates Foundation, the Ewing Marion Kauffman Foundation, and the Rockefeller Foundation and has been invited to lecture in twenty-one countries globally.

**Professor Auerswald's Employment with GMU**

16. GMU hired Professor Auerswald in 2003 as an Assistant Professor of Public Policy in the School of Public Policy (later renamed the Schar School of Public and Government ("Schar School")).

17. In 2009, GMU promoted Professor Auerswald to Associate Professor of Public Policy citing his attainment of "genuine excellence" in both research and teaching.

18. Both the roles of Associate Professor and Full Professor are tenured roles at GMU.

19. Full Professor is the highest rank a professor at GMU can obtain, with the exception of the honorific rank of University Professor.

20. Full Professors are leaders within their respective schools and departments. As articulated in the GMU Faculty Handbook, appointment at the rank of Full Professor is intended to evidence "an established external reputation in the primary field, based on consequential achievements in teaching, research and scholarship, or professional activities directly related to teaching and research and scholarship."

21. Generally, if a professor reaches approximately fifty-five (55) years old and has not been promoted to Full Professor, the academic community within and outside of GMU interprets that lack of promotion as an indicator that the professor is damaged or impaired.

22.     Failure to achieve Full Professor after numerous years at a top research university like GMU is harmful to a professor's reputation and limits the professor's capacity to progress within and outside of the University.

**Schar School's Biased Promotion Practices Led by Dean Rozell.**

23.     Beginning in 2014, Professor Auerswald raised concerns about the Schar School's arbitrary hiring, tenure, and promotion policies.

24.     GMU's Faculty Handbook empowers each school or college within the University to create its own tenure processes and procedures, overseen by the Dean of each school.

25.     The track to promotion at George Mason University is long. Faculty seeking promotion must undergo no less than six (6) rounds of scrutiny by six (6) different individuals or groups of individuals.

26.     As GMU explains it:

Promotion is initiated by the local academic unit, with the faculty member's concurrence, and begins with a review and vote by a committee made up of faculty members in the applicant's local academic unit (i.e., the "first-level committee"). The recommendations of the first-level committee are then sent to a "second-level committee" made up of tenured faculty from the applicant's college or school (e.g., the Schar School) elected to serve. The second-level committee conducts a review and makes a recommendation, which is then forwarded to the Dean of the applicant's college or school. The Dean reviews all of the materials that have been submitted and makes their own recommendation to the Provost. If the Provost recommends that tenure should be granted, that recommendation is forwarded to the President of the University who, if in agreement with the recommendation, forwards it to the University Board of Visitors. Per the Faculty Handbook §2.3, "[t]enure, and promotion to the rank of associate professor or [full] professor, can only be conferred by the Board of Visitors." If the Provost, President, or Board of Visitors determines that tenure or promotion should not be granted, the applicant is notified that tenure has been denied.

27.     The Faculty Handbook requires candidates for promotion to full professor to maintain "high competence" in teaching, research, scholarship, and service while also maintaining "genuine excellence" in teaching and/or research and scholarship.

4

28. The bylaws of the Schar School contain <u>no guidance whatsoever</u> regarding what constitutes "high competence" or "genuine excellence."

29. This gives the Schar School faculty committee wide latitude to promote or deny any professor's application under the guise of failing to meet the "high competence" or "genuine excellence" standards.

30. For example, the Schar School faculty committee may recommend a candidate for promotion on the basis of "genuine excellence" in research who has published zero books and one highly cited peer-reviewed paper while, in the same year, recommending against the promotion of another candidate who has published multiple books and a half-dozen high-impact peer-reviewed papers, claiming that the second candidate failed to meet the standard of "genuine excellence" in research.

31. The current Dean of the Schar School, Mark Rozell, has served in his role since 2013.

32. From 2013 to 2020, the Schar School promoted zero (0) Black professors to tenured roles.

33. As of 2020, out of approximately ninety (90) faculty members, only one (1) Schar School faculty member was Black.

**Professor Auerswald's Complaints on Behalf of Professor W.**

34. In 2013, a Black Associate Professor, Michael Fauntroy, resigned his employment at GMU after ten (10) years and transferred to Howard University. Professor Fauntroy was the last black faculty member to have been promoted at the Schar School.

35. During 2016 and 2017, Professor Auerswald observed one of the Schar School's most promising Professors (Professor W) [1] on the cusp of departing from the University out of frustration with the Schar School's processes for faculty assessment, promotion, and tenure.

36. Professor W is a Black female and was hired in 2011 as an Assistant Professor in the Organizational Development and Knowledge Management (ODKM) program within the Schar School.

37. The ODKM program was very small and only consisted of three faculty members: the Department Chair, Tojo Thatchenkery (Professor Thatchenkery, Asian), one White Professor and Professor W (Black).

38. Professor Thatchenkery was Professor W's direct supervisor.

39. Professor W possessed a strong and growing external reputation in leading edge topics, notably data science. She also won a Faculty Early Career Development Program (CAREER) Award from the National Science Foundation (NSF) in February 2017. The NSF CAREER award is highly competitive and the most prestigious early career grant awarded by the National Science Foundation in any field.

40. Professor W's outstanding reputation made her a threat to Professor Thatchenkery's role as Department Chair.

41. Professor Thatchenkery went out of his way to be appointed to the committee that wrote Professor W's performance review and join the Faculty Committee that reviews promotion applications.

---

[1] Referred to as "Professor W" for anonymity.

42. Because of the ODKM program's previous joinder with the Schar School, the ODKM program did not provide a clear promotion path for professors in the department seeking promotion.

43. Professor W tried to seek guidance from Professor Thatchenkery about how she could apply for a Associate Professor role, but neither Professor Thatchenkery nor the Schar School leadership provided her with a substantive path to Associate Professorship.

44. Professor W informed Professor Auerswald about her desire to seek Associate Professorship. Professor Auerswald observed Professor W's unique talent, skills, and assets and advocated for her promotion to Dean Rozell during 2016 and 2017.

45. Professor Auerswald emailed Dean Rozell in May 2016 that Professor W was "concerned by the lack of clarity in the tenure review process."

46. Throughout 2016 and 2017, Professor Auerswald continued to complain to Dean Rozell about the Schar School's lack of consistent, transparent standards for promotion which resulted in a system where White and Asian candidates were hired and promoted and Black professors (like Professor W) were either not promoted or not hired to begin with.

**GMU Refused to Consider Professor Auerswald's Promotion Application**

47. In May 2017, Professor Auerswald submitted his declaration of intent to be considered for a promotion to Full Professor.

48. In November 2017, Professor Auerswald told Dean Rozell via phone that he believed Professor W was facing race discrimination from Professor Thatchenkery, and that he himself was now the subject of retaliation by Professor Thatchenkery for complaining about the Schar School's policies.

7

49. During the phone call, Dean Rozell mentioned for the first time that Professor Auerswald had not timely declared his intent to seek a Full Professor role. (Professor Auerswald had declared his candidacy in keeping with the bylaws of the School of Public Policy, but a month later according to the recently adopted bylaws.)

50. After months or years asking for clear guidance on how to be promoted to Associate Professor and no promotion process in sight, Professor W resigned her employment with GMU in December 2017.

51. On December 1, 2017, Dean Rozell appointed Professor Thatchenkery as the chair of the "liaison committee" responsible for managing Professor Auerswald's promotion case.

52. Professor Thatchenkery urged the faculty committee to refuse to consider Professor Auerswald's application, due to the alleged late disclosure. The Dean ratified the decision not to vote on Professor Auerswald's promotion application in January 2018.

53. Professor Auerswald's case is the only one in the history of the Schar School in which a faculty committee has refused to vote on a candidacy for promotion in this manner.

54. In 2021, after Professor Auerswald filed his EEOC Charge alleging racial bias in GMU's promotion policies, GMU re-hired Michael Fauntroy.

55. Since Professor W resigned, the Schar School has promoted two White women who are less qualified than Professor W, one to the rank of Associate Professor and another to the rank of Full Professor.

**Professor Auerswald's Complaints on Behalf of Dr. M.**

56. In Spring 2018, Professor Auerswald re-submitted his intent and application for promotion to Full Professor.

57. From 2011 to 2019, Professor Auerswald served as the Chair of the Dissertation Committee for a doctoral student from Kenya (Dr. M).[2]

58. In 2016, Dr. M defended his thesis for the first time and was denied. Professor Auerswald believed he had not adequately prepared Dr. M for the dissertation defense. Professor Auerswald spent 2017-2018 coaching Dr. M to improve his work.

59. In Spring and Summer 2018, Dr. M's work product improved dramatically Dr. M submitted his rewritten dissertation to the full committee for review.

60. For months in Fall 2018, a White dissertation committee member, Professor Hilton Root (Professor Root) refused to consider or read Dr. M's work. At a decisive meeting, he explained this refusal by stating that "some people aren't meant to get doctorates."

61. Professor Auerswald complained verbally and in writing to Dean Rozell during 2018 and 2019 that Professor Hilton was biased towards Dr. M because of his race and national origin.

**GMU Denied Professor's Auerswald's Promotion Application**

62. In January 2019, the first-round faculty review committee, chaired by Professor Root, issued a recommendation to deny Professor Auerswald's promotion application, based on alleged failure to achieve "genuine excellence" in research.

63. In February 2019, the second-round faculty review committee rejected the first-round committee's determination regarding alleged deficiencies in Professor Auerswald's research, and recommended Professor Auerswald for promotion.

64. Two days later, Dean Rozell affirmed the second level committee's positive determination with respect to research, but took the unprecedented step of recommending the

---

[2] Referred to as "Dr. M" for anonymity.

9

denial of Professor Auerswald's promotion based on failure to meet the secondary criterion of "high competence" in teaching. This recommendation was contrary to the findings of both of the faculty committees.

65. In May 2019, Professor Auerswald appealed the denial of his promotion application.

66. In August 2019, Professor Auerswald complained to Dean Rozell about Professor Root's race-based bias towards Dr. M During the same month, a staff member at the school asked Dean Rozell if he believed Professor Auerswald's advocacy for Dr. M had negatively impacted his promotion application. Dean Rozell responded, "it probably did."

67. In December 2019, Professor Auerswald complained again to Dean Rozell about Professor Root's biased and discriminatory conduct.

68. In March 2020, Professor Auerswald complained to GMU's general counsel and the Provost about Professor Root, Professor Thatchenkery, and Dean Rozell's pattern of racism evidenced in the cases of Professor W and Dr. M.

69. In December 2020, Professor Auerswald filed an EEOC Charge alleging retaliation.

70. In June 2022, GMU promoted Professor Auerswald to Full Professor.

**COUNT ONE**
**TITLE VII – 42 U.S.C. § 2000(e)-3**
**RETALIATION**

71. Professor Auerswald incorporates by reference paragraphs 10 to 72 above.

72. Title VII's oppositional clause provides that, "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a

charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000(e)-3.

73. Professor Auerswald engaged in protected activity when he complained about race discrimination faced by Professor W and Dr. M and the Schar School's policies that enable biased and race-based promotion decisions.

74. During Spring and Fall 2017, Professor Auerswald complained verbally and in writing to Dean Rozell that Professor W was being treated differently than White faculty by her supervisor, Professor Thatchenkery.

75. GMU subjected Professor Auerswald to an adverse employment action by denying his 2017-2018 application for promotion to Full Professor.

76. GMU denied Professor Auerswald a promotion to the rank of Full Professor by refusing to consider his application.

77. Professor Auerswald's protected activity and GMU's decision were causally connected and not wholly unrelated.

78. A reasonable professor would be dissuaded from complaining if their application for a promotion was dismissed as a result.

79. Dean Rozell (to whom Professor Auerswald complained) and Professor Thatchenkery (about whom Professor Auerswald complained) were involved in the decision to deny Professor Auerswald a promotion.

80. Dean Rozell spoke to Professor Auerswald about his alleged late disclosure of his intent to seek a promotion <u>during the same phone call</u> when Professor Auerswald complained on behalf of Professor W.

81. GMU retaliated against Professor Auerswald for opposing conduct made unlawful under Title VII by refusing to consider his 2017-2018 Full Professor application and denying him a promotion.

82. Professor Auerswald re-applied for promotion in the 2018-2019 term.

83. In 2018, 2019, and 2020, Professor Auerswald engaged in protected activity by complaining to Dean Rozell, the Provost, and GMU's General Counsel about Professor Root's biased and discriminatory behavior towards Dr. M.

84. In Spring 2019, a faculty committee chaired by Professor Root recommended against Professor Auerswald's second promotion application.

85. In Fall 2019, Dean Rozell confirmed that Professor Auerswald's prior protected activity negatively impacted his promotion application.

86. GMU subjected Professor Auerswald to an adverse employment action when it continued to deny his application for promotion during 2019 to 2022.

87. Professor Auerswald's protected activity and GMU's decision were causally connected and not wholly unrelated.

88. A reasonable professor would be dissuaded from complaining if their application for a promotion was denied as a result.

89. The same individuals to whom and about whom Professor Auerswald complained (Dean Rozell, Professor Thatchenkery, and Professor Root) were directly involved in the decision to deny Professor Auerswald's promotion.

90. GMU retaliated against Professor Auerswald for opposing conduct made unlawful under Title VII by denying him a promotion to Full Professor from 2017 to 2022.

91.     As an actual and proximate cause of Defendant's conduct, Professor Auerswald has suffered physical injury, emotional distress, embarrassment, humiliation, reputational damage, loss of wages and benefits, and loss of career opportunity.

92.     Professor Auerswald seeks nominal, compensatory, and punitive damages to compensate him for harm inflicted by Defendant. Professor Auerswald seeks backpay with pre and post judgment interest, and repayment of his attorneys' fees and litigation costs and expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Philip Auerswald, respectfully requests that this Honorable Court enter judgment in his favor on all Counts of his Complaint and against Defendant, George Mason University, and that he be awarded the following relief:

a.  Entry of judgment in favor of Plaintiff on Count One;

b.  Award of back pay for Plaintiff against Defendant;

c.  Award of nominal and compensatory damages for Plaintiff against Defendant;

d.  Award of punitive damages for Plaintiff against Defendant;

e.  Award of reasonable attorneys' fees and litigation costs and expenses for Plaintiff against Defendant;

f.  Award of pre and post judgment interest for Plaintiff;

g.  Any other relief that this Court deems equitable, appropriate, and just.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Francisco Mundaca*
Francisco Mundaca

Virginia State Bar No. 96073
THE SPIGGLE LAW FIRM PLLC
3601 Eisenhower Ave, Suite 425
Alexandria, Virginia 22304
fmundaca@spigglelaw.com

*Counsel for Plaintiff Philip Auerswald*